**TEXAS AMERICAN BANK and Vincent E. Drain, As Independent Co-Executors of the Will of Milhous Jackson Mitchell, Deceased, Appellants,**

v.

**Lew C. SAYERS, Appellee.**

Court of Appeals of Kentucky.

May 18, 1984.

Bert T. Combs, Francis J. Mellen, Jr., Wyatt, Tarrant & Combs, Louisville, William E. Rummage, Patrick D. Pace, Rummage, Kamuf, Yewell & Pace, Owensboro, for appellants.

Morton Holbrook, Lizbeth Ann Tully, Holbrook, Gary, Wible & Sullivan, P.S.C., Owensboro, for appellee.

Before REYNOLDS and WILHOIT, JJ., and PAXTON, Special Judge.

PAXTON, Special Judge.

Texas American Bank and Vincent E. Drain, independent co-executors of the estate of Milhous Jackson Mitchell[1], appeal from a judgment of the Daviess Circuit Court, sitting without a jury, which determined that it had personal jurisdiction over Mitchell under KRS 454.210, the "long arm" statute, and that Mitchell and Lew C. Sayers entered into an enforceable oral contract on or about July 17, 1975.

1. Mr. Mitchell passed away within a few days

Mitchell and Sayers were residents of Texas, and acquaintances for several years before Mitchell purchased 36% of the outstanding Owensboro National Bank stock in 1970. Shortly thereafter, Sayers moved from Texas, established residence in Owensboro, and, on Mitchell's recommendation, was appointed to the dual positions of senior vice-president and chief executive officer of ONB. At the time he purchased the ONB stock, Mitchell owned a controlling interest in Central Bank & Trust Company of Owensboro, and a considerable number of shares in First Bank & Trust Company of Mt. Vernon, Illinois. Sayers stayed with ONB until the latter part of August, 1975, and was hired by First Bank & Trust Company as its chief executive officer on October 10th of that same year. He remained with First Bank & Trust Company until November, 1978, when he resigned and moved back to Texas. He was a resident of Texas when he filed this action in the Daviess Circuit Court alleging that he and Mitchell entered into an oral contract on July 17, 1975, and asking the court to require Mitchell to award him 50% of the profits on Mitchell's stock in First Bank & Trust when it was sold. Mitchell moved for dismissal of the action because, inter alia, the Daviess Circuit Court lacked jurisdiction over his person. The trial court denied the motion, and Mitchell then answered, denying the oral contract, and he again asserted lack of personal jurisdiction over him by the trial court.

After several days of trial, the trial court again held that it had personal jurisdiction over Mitchell by virtue of the "long arm" statute, KRS 452.210. The trial court also found that by telephone call of July 17, 1975, from Mitchell in Texas to Sayers in Owensboro, the parties entered into an oral contract which provided that in exchange for one-half of the profit derived from the sale of Mitchell's stock in First Bank & Trust, Sayers would:

1. Negotiate the sale of Mitchell's stock in ONB;

after conclusion of the trial.

2. Resign his position as senior vice-president and chief executive officer of ONB;

3. Move to Mt. Vernon, Illinois, and take the position of chief executive officer of First Bank and Trust Company; and,

4. Keep the First Bank & Trust Company open, or, "get the ox out of the ditch."

Based upon its findings of fact and conclusions of law, the trial court entered judgment that:

Sayers is entitled to one-half the profits from the sale of Mitchell's stock in First Bank & Trust Company [2] of Mt. Vernon, Illinois under a valid and enforceable contract. Defendants are required to sell the stock in the bank within one year from the date of this judgment, with the sale to be conducted under reasonable commercial standards.

This appeal by the co-executors ensued.

The co-executors argue:

1. The Kentucky Courts cannot assert personal jurisdiction over Mitchell in this case, and

2. Assuming the Kentucky Courts have personal jurisdiction over Mitchell, the alleged oral agreement is unenforceable under the Statute of Frauds.

Appellants apparently concede that there is sufficient evidence in the record to substantiate the finding of the trial court that Mitchell and Sayers did enter into an oral contract. They argue, however, that even if there was a contract, it was void and unenforceable under KRS 371.010, the Statute of Frauds, because it could not be performed within one year from July 17, 1975, the date of its execution. This argument is predicated upon the notion that the contract called for Sayers to stay at First Bank & Trust until its stock was saleable at a profit to Mitchell. However, the trial court specifically found that the contract

called for Sayers to "Keep the First Bank & Trust Company open, or, 'get the ox out of the ditch.'" Contrary to the appellants' contention, there is adequate evidence in the record to support this finding. There was evidence, for example, to the effect that Mitchell feared in July of 1975 that First Bank & Trust would be closed unless its then chief executive officer was immediately replaced with a person satisfactory to the F.D.I.C. It could reasonably be inferred, from this evidence alone, that Sayers' main obligation under the contract was to keep First Bank & Trust Company from being closed. He performed that part of the contract within one year from July 17, 1975.

Appellants' main contention is that Daviess Circuit Court did not have personal jurisdiction over Mitchell when this lawsuit was filed. Mitchell, being a resident of Texas, is not subject to the jurisdiction of Kentucky courts unless our "long arm" statute, KRS 454.210(2)(a), is applicable; it provides:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth.

The purpose of the statute is to ensure that Kentucky courts comply with federal constitutional requirements of due process before asserting personal jurisdiction over non-resident defendants. Courts have interpreted Kentucky's statute to extend to the outer limits of the due process clause. *See First National Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123 (6th Cir.1982). Both sides agree that this Court, in *Tube Turns Division of Chemetron Corp. v. Patterson Co., Inc.*, Ky.App., 562 S.W.2d 99 (1978), accurately stated the test for meeting the constitutional and statutory requirements of due process:

First, the defendant must purposely avail himself of the privilege of acting in the

---

**2.** The judgment has been amended to reflect the new name of the bank—Mt. Vernon Bancorp, Inc.

forum state or causing a consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, the activities of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.

*Id.* at 100. We believe all three criteria of *Tube Turns* have been met by Mitchell's actions in this case. First, he conducted extensive business in this Commonwealth. The co-executors cite *Lamar v. American Basketball Association,* 468 F.Supp. 1198 (S.D.N.Y.1979), in support of their argument that Mitchell's activities as a shareholder and director of Central Bank & Trust Company and ONB do not constitute the transacting of business by Mitchell in Kentucky within the meaning of the "long arm" statute. The problem with this argument is that Mitchell's activities in Kentucky transcended, by far, representation of his corporate interests. He owned a controlling interest in Central Bank & Trust and ONB at the same time. He arranged for the purchase and sale of Central Bank & Trust and ONB in Kentucky. He financed the purchase of the two banks through Citizens Fidelity Bank & Trust Company of Louisville. We believe the evidence shows Mitchell's interests as a shareholder and director in the Kentucky banks to be secondary to his personal business of buying and selling them.

■ Second, the cause of action arose on account of the extensive activities of Mitchell in Kentucky. In addition to buying and selling banks in Kentucky, he formed the contract that is the subject of this lawsuit in Kentucky when Sayers accepted his telephone offer on July 17, 1975. 17 Am. Jur.2d *Contracts* § 53 (1964). The contract caused activity in Kentucky because, pursuant to its terms, Sayers was required to sell the ONB stock, resign as senior vice-president and chief executive officer of ONB, and move from Owensboro to Mt. Vernon, Illinois. The executors argue that sale of the ONB stock was fully covered in a prior written agreement between Mitchell and Sayers. That is only partially true, because, although the prior written agreement did provide that Sayers would share in the profits of the ONB stock, it did not require Sayers to handle the sale, and it did not provide for a particular time of sale. The oral agreement required Sayers to sell the stock on behalf of Mitchell, and it mandated a speedy sale.

■ Finally, we believe Mitchell's activities in Kentucky, and the consequences caused by him in Kentucky, have a substantial enough connection with this Commonwealth to make the exercise of jurisdiction reasonable. "Both the first and second prongs are met when a dispute arises from a substantial business contract with a corporation based in another jurisdiction. The third factor looks to the extent of the forum state's interest and whether exertion of jurisdiction over the particular defendant is fair. When the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion. Among other considerations, fairness is judged by whether the buyer (1) is an 'active' or 'passive' one (2) could foresee a foreign suit, and (3) has physical contacts with the forum state." *First National Bank of Louisville v. J.W. Brewer Tire Co., supra,* at 1126. Again, Mitchell meets all the criteria. He was certainly an "active" participant in forming the oral contract with Sayers and creating the conditions in Kentucky that brought about ONB's role in the contract. Mitchell should have foreseen a lawsuit against him in Kentucky, because he had previously been sued in the United States District Court for the Western District of Kentucky by the United States Government on account of his banking activities in Daviess County. Such a suit should not have been considered onerous by Mitchell because during 1975, the year in which he made the contract with Sayers, he had frequent contacts with Owensboro, including trips for shareholder and directors' meetings of ONB.

In any event, Kentucky has an interest in seeing that contracts formed in this Commonwealth are carried out. "Failure to honor a contractual obligation incurred in a state cannot reasonably be said to be without consequence there. The effects of such a breach of contract on the general conduct of business may not be readily quantifiable, but they are, nevertheless, real." *Davis H. Elliott Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1181–82 (6th Cir.1975).

Appellants also complain that the trial court adopted the findings of fact and conclusions of law prepared by Sayers' attorneys. We can tell by the transcript of evidence that the trial judge put an enormous amount of time and effort into this case. He very patiently allowed appellants' counsel to repeatedly argue the jurisdiction issue and he presided over several days of trial in a most deliberate and conscientious manner. We believe this issue is controlled by *Bingham v. Bingham*, Ky., 628 S.W.2d 628, 629 (1982):

> There has been no showing that the decision-making process was not under the control of the trial judge, nor that these findings and conclusions were not the product of the deliberations of the trial judge's mind. The evidence adduced at trial clearly supports the findings of fact and conclusions of law announced by the court and in the absence of a showing that the trial judge clearly abused his discretion and delegated his decision-making responsibility under CR 52.01, they are not to be easily rejected.

The judgment of the Daviess Circuit Court is affirmed.

All concur.